NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-371

COMMONWEALTH

vs.

GRANT HEADLEY, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Boston Municipal Court, the defendant was convicted of disturbing a correctional institution, in violation of G. L. c. 268, § 30, and vandalizing jail property, in violation of G. L. c. 266, § 130.  The defendant now appeals from the judgment and contends that the judge punished the defendant in various ways for exercising his right to a jury trial and improperly refused to examine potential jurors as to racial bias and prejudice against incarcerated individuals.  The defendant also argues that his motion for a required finding of not guilty should have been granted as to the charge of vandalizing jail property and that various errors of trial counsel necessitate a new trial.  We affirm.

Background.  We recite the facts in the "light most favorable to the Commonwealth," Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), reserving certain details for later discussion.

The defendant was being held at the Nashua Street jail.  On July 16, 2018, Sergeant Wooten, the housing control supervisor, called in the emergency response team because an inmate had refused to comply with an order to return to his cell.  The defendant was eating dinner when sheriff department Sergeant Hackley and his five-officer emergency response team entered the unit.  When the officers entered, there was no commotion; the prisoners were simply eating dinner.  Sergeant Wooten pointed out the defendant and the officers went over to the defendant, seated at his table, and ordered him to place his hands behind his back.  The defendant cooperated and the officers escorted him out of the unit.

As the defendant was walking out, he began shouting at Sergeant Wooten and yelling profanities at her.  He also spat at the officers, who then placed him against the wall and attempted to de-escalate the situation.  Upon beginning the walk again, the defendant again began to spit and he pulled away from the staff.  He then swung his right foot forward and "kicked the glass out of the egress door for the adjacent unit" causing the

2

glass to spider.  The "riot glass" was fractured from top to bottom with forty to fifty cracks.

Discussion.  1.  Refusal to permit voir dire of jurors.  "A criminal defendant is entitled to a trial by an impartial jury pursuant to the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights."  Commonwealth v. Espinal, 482 Mass. 190, 194 (2019), quoting Commonwealth v. Williams, 481 Mass. 443, 447 (2019).  "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors."  Espinal, supra, quoting Commonwealth v. Dabney, 478 Mass. 839, 848, cert. denied, 139 U.S. 127 (2018).

Certain categories of questions posed to the venire are mandatory, General Laws c. 234A, § 67A, inserted by St. 2016, c. 36, § 4 (formerly G. L. c. 234, § 28), and require the trial judge in every criminal case to inquire into several subjects. The second paragraph of § 67A requires additional inquiry of jurors where "it appears that . . . a decision [may] be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons."

"We have interpreted this language to mean that, where a defendant can show that there exists a substantial risk of

3

extraneous issues that might influence the jury, additional questioning is required . . . [of] each prospective juror individually and outside the presence of other persons" (quotations and citations omitted). Espinal, 482 Mass. at 196. Such inquiry is required, when requested by the defendant, "whenever the victim and the defendant are of different races or ethnicities, and the crime charged is murder, rape, or sexual offenses against children." Id.

Here, the defendant requested attorney-conducted panel voir dire on topics that included:

"2. Personal views on race, namely views on the implicit bias that exists between race and views/perception of dangerousness

"3. Personal views on prisoners who are accused of crime."

The judge denied counsel's request for attorney-conducted panel voir dire but stated, "I'll allow some reasonable followup questions to be asked of jurors at sidebar here if they indicate that there's an issue where they raised their hand in response to certain questions." Although trial counsel proposed questions for attorney-conducted voir dire, she did not offer questions for the judge to ask the venire, nor did she object when the judge failed to query the venire about their views on race, implicit bias, or prisoners who are accused of crimes. Because the defendant did not object at trial, we consider whether there was error, and, if so, whether the error created a

4

substantial risk of a miscarriage of justice.  See Commonwealth
v. Heywood, 484 Mass. 43, 45 (2020).

We review a trial judge's decisions regarding the scope of
jury voir dire for abuse of discretion.  See Commonwealth v.
Lopes, 440 Mass. 731, 736 (2004).  "A judge need not probe into
every conceivable bias imagined by counsel," Espinal, 482 Mass.
at 198, and "is warranted in relying upon his [or her] final
charge to the jury to purge any bias from the jurors prior to
their deliberations," Commonwealth v. Estremera, 383 Mass. 382,
388 (1981).  "A defendant's 'bare allegation' that there exists
a 'widespread belief' that could result in bias is not
sufficient to cause us to conclude that the judge abused his [or
her] discretion by declining to conduct voir dire on the issue"
(citation omitted).  Espinal, 482 Mass. at 200.

The defendant, who is Black, was charged with a property
crime.  To the extent that it matters -- which we need not
decide -- the incident involved at least one Black jail guard,
and at least one white.  Espinal does not require the judge to
probe ethnic or racial bias by voir dire in this instance.  See
id. at 196.

The judge also declined to probe potential juror bias
either against prisoners or in favor of law enforcement.
Because the Supreme Judicial Court has not ruled that these
types of biases produce a "substantial risk of extraneous

influence" on a juror's ability to impartially hear a case, the decision of whether to examine such potential biases is left to the sound discretion of the judge. Espinal, 482 Mass. at 197. We would conclude that the judge abused his discretion only if the record demonstrated "some reason to suspect that jurors may be so prejudiced." Id. at 198.

Here, defense counsel suggested to the judge that some people hold biases either against prisoners or in favor of law enforcement, but did not allege that any juror was so biased. We therefore discern no abuse of discretion in the judge's determination not to conduct the requested voir dire in this case.

2. Sufficiency of the evidence. In reviewing the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). "A conviction may be based on circumstantial evidence and the permissible inferences drawn therefrom." Commonwealth v. Roy, 464 Mass. 818, 824 (2013). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Ross, 92 Mass. App. Ct. 377, 378 (2017), quoting Commonwealth v. Waller,

6

90 Mass. App. Ct. 295, 303 (2016). "Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence, '[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time.'" Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006), quoting Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).

In order to be convicted of vandalizing jail property, in violation of G. L. c. 266, § 130, the Commonwealth must prove beyond a reasonable doubt that the defendant acted willfully, which requires proof that the defendant intended the proscribed conduct and its consequences, see Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 4 n.2 (2001), and maliciously, which requires a "spirit of cruelty, hostility or revenge," Commonwealth v. Williams, 110 Mass. 401, 402 (1872).

"In determining whether the evidence was sufficient to show that the defendant harbored [a certain] intent, [a court will] not reweigh the evidence in order to decide whether the determination that the jury reached is correct." Commonwealth v. Schoener, 491 Mass. 706, 719 (2023). "Rather, after considering the evidence and the inferences to be drawn therefrom in the light most favorable to the Commonwealth, [the court will] decide only whether the jury made a rational

7

decision based on the evidence before them." Id. The defendant was yelling obscenities at the officers, spat at them, was angry at them, and kicked a riot glass panel with enough force to break the glass. This evidence was sufficient to support the inference that the defendant intended to break the glass and did so maliciously.

3. Judicial bias. In conversation with the prosecutor and defense counsel after motions in limine, the judge discussed the possibility of the case resolving short of trial:

> "Have the parties tried to resolve this case short of trial? Because Mr. Headley's looking at two and a half years house of correction on the vandalizing, prison vandalizing jail property, and another three months on disturbing a correctional institution. . . . Because once it goes forward, then all bets are off. And if your client's convicted and [sic] he's looking at some serious time. . . . Well, you know, you can always get a from and after sentence, counsel. I don't know if you discussed that with your client. So you know, it's up to the parties as to whether you want to try to resolve it, but always before a trial I try to see if counsel can resolve the case because this is the last, the last stand as it is. So if this case can be resolved, I suggest that you try to do so, because there are always consequences that you may not anticipate in these matters if that's a big -- if your client's convicted."

A defendant has a right to be tried by a fair and impartial judge. See Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal"). See also Varga v. Board of Registration of Chiropractors, 411 Mass. 302, 305 n.3 (1991),

8

quoting King v. Grace, 293 Mass. 244, 247 (1936) ("The provisions of art. 29 are 'at least as rigorous in exacting high standards of judicial propriety as are those of the Fourteenth Amendment'"). We look to a set of factors on the issue of vindictiveness. See Commonwealth v. Johnson, 27 Mass. App. Ct. 746, 751-752 (1989). These include evidence of pressure on the defendant to accept a plea or of the judge's displeasure in the defendant's refusal of the offer; the severity of the sentence in relation to the sentence authorized by statute; and the Commonwealth's recommended sentence. Id.

After careful review of the record, we are not persuaded that the judge's comments to defense counsel and rulings on motions show that he was not impartial or was vindictive towards the defendant. Nor does the imposition of the sentences after the defendant chose to go to trial suggest that he was being punished for his decision. Provided that the decision is based on appropriate considerations, "[a] trial judge is permitted 'great latitude' in sentencing." Commonwealth v. Derouin, 31 Mass. App. Ct. 968, 970 (1992), quoting Commonwealth v. Celeste, 358 Mass. 307, 310 (1970). A judge may consider punishment, deterrence, rehabilitation, the defendant's behavior, character, background, and the nature of the offense and the circumstances surrounding the commission of the crime. Commonwealth v. Goodwin, 414 Mass. 88, 92 (1993); Derouin, supra.

9

The defendant maintains that the judge's expressions of bias began with his pretrial comments about sentencing. In context, those comments were an expression of appropriate sentencing considerations. A defendant's admission of guilt "is a proper factor in more lenient sentencing," although failure to do so may not be considered as an aggravating factor. Johnson, 27 Mass. App. Ct. at 751. See Commonwealth v. Souza, 390 Mass. 813, 820 (1984). Additionally, "[t]rial judges are permitted to inform defendants about their options and about the ramifications of a decision to enter a plea or proceed to trial." Commonwealth v. Carter, 50 Mass. App. Ct. 902, 903 (2000).

The focal point of the sentencing hearing was the defendant's criminal record. The judge stated that he was "shocked by this criminal history," which included three firearm offenses in eleven years, the last of which resulted in an eight to ten year State prison sentence. Even defense counsel acknowledged that the defendant "does have a lengthy record, and some of those offenses are serious offenses."

The fact that the sentence exceeded the one discussed by the judge prior to trial does not establish a "reasonable likelihood" of "vindictiveness." See Commonwealth v. Ravenell, 415 Mass. 191, 194-195 (1993). After all, a plea bargain regularly results in a more lenient sentence. See Johnson, 27

10

Mass. App. Ct. at 750-751 ("The willingness of the defendant to admit guilt . . . is a proper factor in more lenient sentencing").

The defendant also argues that the judge's decision to revoke jail credits is evidence of the judge's vindictiveness. "If a defendant is held in custody before trial, G. L. c. 279, § 33A, and G. L. c. 127, § 129B, mandate that he or she be credited with those days spent incarcerated toward the sentence eventually received." Commonwealth v. Caliz, 486 Mass. 888, 891 (2021). "[W]here the statute does not strictly control, considerations of fairness and fair treatment of the defendant guide the determination of whether to give jail credit." Commonwealth v. Maldonado, 64 Mass. App. Ct. 250, 251 (2005).

Here, the defendant's pretrial incarceration resulted from his serving another sentence. The application of jail credits is within the discretion of the judge. While the judge's decision not to credit the defendant's previous sentence time after originally crediting the time significantly increased the defendant's incarceration time, this change was within the judge's authority because the defendant was not entitled to that credited time.

We conclude that the defendant was not unfairly tried or vindictively sentenced. Because the sentence was prescribed by

11

the Legislature, it was not cruel and usual for the judge to impose the sentence.

4.  Ineffective assistance of counsel.  The defendant points to several instances where counsel failed to take certain actions.  However, because no motion for new trial was filed and heard, we can only speculate as to the reasons for these omissions.  See Commonwealth v. Rice, 441 Mass. 291, 304 (2004). In any event, the alleged deficiencies do not warrant relief.

The defense at trial was the inadequacy of the investigation and the destruction of a video of the incident. It mattered not that counsel failed to request a Bowden instruction.  Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).  Bowden does not mandate an instruction; it "simply holds that a judge may not remove the issue from the jury's consideration."  Commonwealth v. O'Brien, 432 Mass. 578, 590 (2000).  Here, counsel developed the issue and argued it in closing.  Because the defendant cannot demonstrate that a Bowden instruction would have accomplished something material for the defense, he cannot establish that his attorney was ineffective for failing to request one.

The failure of defense counsel to object to answers given by Lieutenant Hackley that the defendant was "familiar with the routine" of being escorted into segregation and that the jail

12

was a "pretty violent facility," did not create a substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Meade, Hershfang, & D'Angelo, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  September 27, 2023.

---

[1] The panelists are listed in order of seniority.